IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                CASE NO. 5:09-cv-105/RS-EMT

HUBERT E. STEELEY, URSULA E.
STEELEY, JOHN A. BALDWIN,
BAY POINT IMPROVEMENT
ASSOCIATION, INC. d/b/a BAY POINT
COMMUNITY ASSOCIATION, and
BEN LANIER, as Trustee for the
LAVERNOR LAVEON LANIER, JR.
a/k/a L.L. LANIER AND MARTHA T.
LANIER FAMILY TRUST,

    Defendants.
_____/

## **ORDER**

Before me is Plaintiff's motion for summary judgment (Doc. 50).

## **I. STANDARD OF REVIEW**

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the

1

court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Defendants. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

There is virtually no dispute between the parties regarding the material facts of the case. Gulf Pines Hospital, Inc. was formed in 1987 by Hubert Steeley.

Marquis Management Group was later formed to own the stock of Gulf Pines Hospital and perform limited management functions for the hospital. At all times, Marquis Management Group owned 100 percent of the stock of Gulf Pines Hospital, and Defendant Hubert Steeley owned 100 percent of the stock of Marquis Management Group. Defendant Steeley was also president of Gulf Pines Hospital and Marquis Management Group.

As president and sole shareholder of Marquis Management Group, Defendant Steeley was in charge of operations. He managed employees, had the authority to hire and fire employees, and had authority to direct the payment of bills. Similarly, as president of Gulf Pines Hospital, Defendant Steeley was an authorized signatory on the hospital's checking accounts, managed employees, had the authority to hire and fire employees, and directed the payment of bills. For both companies, Defendant Steeley had the authority to determine company financial policy and made all financial decisions.

In 1994, Gulf Pines Hospital and Marquis Management Group began to experience cash flow problems that affected their ability to pay their debts, including federal taxes. For the tax periods ending September 30, 1998, and December 31, 1998, Marquis Management Group failed to remit to the United States the entire amount of Federal Insurance Contribution Act (FICA) taxes and withholding taxes that it reported on its Form 941 employment tax returns. For the

tax periods ending September 30, 1996, September 30, 1998, December 31, 1998, March 31, 1999, June 30, 1999, September 30, 1999, and June 30, 2000, Gulf Pines Hospital failed to remit to the United States the entire amount of FICA taxes and withholding taxes it reported on its Forms 941 for those periods. Liabilities for September 30, 1996, were subsequently paid in full.

While Defendant Steeley cannot recall the exact date when he became aware of the taxes owed, he knows it was when the Internal Revenue Service (IRS) contacted him regarding the tax delinquencies. Steeley recalls this occurring in 1999, but IRS records show that they initially contacted him in March of 1998. Regardless of the exact time frame, after learning that employment taxes were not being remitted to the Treasury, Steeley made a conscious decision to keep running Gulf Pines Hospital. Steeley authorized payment of operating costs such as medicine, supplies, and salaries, despite knowing that employment taxes were not being paid in full. Marquis Management Group, as authorized by Steeley, also paid all employee salaries it owed until it ceased operations in 1999, even though Steeley knew taxes were owed. Gulf Pines Hospital filed for bankruptcy on July 7, 2004, and August 22, 2005.

Pursuant to 26 U.S.C. § 6672, on February 19, 2001, the government assessed trust fund recovery penalties against Steeley in the amount of $52,574.71 for the periods ending in September 30, 1998 and December 31, 1998. On August

4

16, 2000, the government assessed additional trust fund recovery penalties against Steeley in the amount of $597,468.58 for the periods ending September 30, 1998 through September 30, 1999.  On March 15, 2004, the government assessed further trust fund recovery penalties against Steeley in the amount of $49,028.27 for the period ending June 30, 2000.  Steeley disputes the amounts owed, arguing that the government failed to correctly apply credits to which he is entitled to the balance owed.

Hubert Steeley owns a one-half interest in real property in Gulf County at 9115 Highway 98, Port St. Joe Beach, Florida (the "Gulf County Property") and a one-half interest in real property in Bay County at 4305 Bay Point Road, Panama City Beach, Florida (the "Bay County Property").  Hubert Steeley's former wife, Ursula Steeley, holds the other one-half interest in both properties.  The government has filed notices of tax liens on both properties.  There is an earlier mortgage on the Gulf County Property initially held by L.L. Lanier and Martha T. Lanier, which was later assigned to the L.L. Lanier and Martha T. Lanier Family Trust.  In addition, John Baldwin holds a mortgage on Ursula Steeley's interest in the Gulf County Property.  The parties have stipulated that both mortgages are superior to the tax liens of the United States.  (Doc. 53).

# III. ANALYSIS

## A. Liability Under 26 U.S.C. § 6672

26 U.S.C. § 6672 imposes personal liability "upon (1) a responsible person (2) who has willfully failed to perform a duty to collect, account for, or pay over federal employment taxes." *Thosteson v. United States,* 331 F.3d 1294, 1298-99 (11th Cir. 2003) (citing *Williams v. United States.*, 931 F.2d 805, 801, *reh'g granted and opinion supplemented*, 939 F.2d 915 (11th Cir. 1991)).

### *1. "Responsible" Person*

Responsibility under § 6672 is "a matter of status, duty and authority, not knowledge." *Thosteson* at 1299, (quoting *Mazo v. United States.*, 591 F.2d 1151, 1156 (5th Cir. 1979)). Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. *George v. United States*, 819 F.2d 1008, 1011(11th Cir. 1987). More than one person may be a "responsible person" at a company. *Id.* (citing *Roth v. United States,* 779 F.2d 1567, 1571 (11th Cir. 1986).

In the instant case, Defendant Hubert Steeley has not disputed that he was a responsible person. Furthermore, the undisputed facts show that Steeley served as president of both Marquis Management Group and Gulf Pines Hospital, owned 100 percent of the stock of Marquis Management Group which in turn owned 100

percent of the stock of Gulf Pines Hospital, managed employees, had the authority to hire and fire employees, had signature authority on corporate bank accounts, had authority to direct the financial policy of both companies, and made financial decisions for both companies. Thus, as a matter of law Hubert Steeley was a "responsible person" for both companies under § 6672.

## *2. Willfulness*

Once it is established that a taxpayer is a responsible person, the burden of proving lack of willfulness shifts to the taxpayer. *Thibodeau v. United States*, 828 F.2d 1499, 1505 (11th Cir. 1987) (citing *Mazo v. United States*, 591 F.2d 1151, 1155 (5th Cir. 1979)). The willfulness requirement is met if there is evidence that the responsible officer had knowledge of the payments to other creditors after he was aware of the failure to remit the withheld taxes. *Thibodeau* at 1505. That the payments were necessary to keep the business from going under is no excuse; the government cannot be made an unwilling partner in a business experiencing financial difficulties. *Id.* Furthermore, the willfulness requirement is satisfied even if the responsible person acts with only a "reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government, such as by failing to investigate or to correct mismanagement after being notified that withholding taxes have not been duly remitted." *Malloy v. United States*, 17 F.3d

329, 332 (11th Cir. 1994) (citing *Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir. 1979)).

In the instant case, there is no dispute that Defendant Steeley paid operating costs, including employee salaries, despite knowing that taxes had not been paid in full. This clearly demonstrates willfulness as a matter of law under § 6672. Defendant Steeley does not appear to dispute this, but only argues in his defense that IRS employee Wanda Waters indicated in a memo that she did not believe Steeley acted willfully. However, Waters' opinion was overruled by her supervisor, and the penalty was assessed by the IRS. Furthermore, one employee's unsupported opinion is not sufficient to overcome what is proven as a matter of law by the undisputed facts.

Defendant Steeley also argues that he is not liable for the penalties because the government failed to provide him notice pursuant to § 6672(b). Section (b) provides the taxpayer an abatement of action for 90 days after the taxpayer is given notice of the assessment of a penalty. The penalty assessments at issue were made in 2000 and 2001, so despite not receiving notice letter immediately, Steeley has now had well over 90 days notice. Therefore, any argument regarding notice under § 6672(b) is moot. Furthermore, § 6672(b) provides no other remedy aside from abatement for 90 days; therefore, the penalties are still valid as assessed against Defendant.

Accordingly, Defendant Steeley is liable for the trust fund penalties assessed against him as a matter of law pursuant to 26 U.S.C. § 6672. The only issue remaining for trial is the exact amount of penalties owed, as Steeley disputes the amount owed based on credits he argues the government has failed to properly apply.

### B. Foreclosure of Liens

When a person liable to pay any tax neglects or refuses to pay the same after demand, "the amount shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The lien arises at the time the assessment is made and continues until the liability for the amount assessed is satisfied or becomes unenforceable by reason of lapse of time. 26 U.S.C. § 6322. A tax lien is therefore appropriately attached to Defendant Steeley's ownership interests in both the Gulf County Property and the Bay County Property.

26 U.S.C. § 7403 permits the United States to foreclose its tax liens on Steeley's property interests. When a claim or interest of the United States has been established, the court may then "decree a sale of such property and distribute the proceeds according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403. Although a district court has limited discretion to decide not to proceed with a forced sale authorized by § 7403,

it is not unbridled discretion, and when the interests of third parties are involved only a certain fairly limited set of considerations are appropriate. *United States v. Rogers*, 461 U.S. 677, 709-10, 103 S.Ct. 2132, 2151 (1983). Discretion to prevent a sale should be exercised rigorously and sparingly, keeping in mind the government's paramount interest in prompt and certain collection of delinquent taxes. *Id.* at 711.

In deciding whether a forced sale of a third party's property interest is appropriate, a court should first consider the extent to which the government's financial interests would be prejudiced if it were relegated to a forced sale of only the partial interest of the person liable for the delinquent taxes. *Id.* at 710. Because the properties in the instant case are residential real properties, the government's financial interests would be significantly prejudiced by only a partial sale.

A court should next consider "whether the third party with a non-liable separate interest in the property would, in the normal course of events, have a legally recognized expectation that the separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors." *Id.* at 710-11. The court should also consider any likely prejudice to the third party, both in personal dislocation costs and undercompensation. *Id.* Ursula Steeley has not argued that she has a legally recognized expectation that a forced sale of her interest would not

occur, nor would she suffer significant prejudice as she would receive full compensation for her half interest in the properties.

Finally, a court should consider the relative character and value of the non-liable and liable interests held in the property to make sure a sale would not be unreasonable. *See id.* Here, Ursula Steeley and Hubert Steeley have equal interests in the properties; therefore, her interest does not outweigh his interest in a way that would make a foreclosure unreasonable.

These factors are not exhaustive, and consideration of special circumstances is permitted. *See id.* However, the instant case does not present special circumstances providing a compelling reason to exercise this Court's limited discretion to refuse to conduct a forced sale. A judicial sale of the properties is therefore appropriate pursuant to § 7403. The mortgages of the L.L. Lanier and Martha T. Lanier Family Trust and John Baldwin on the Gulf County property are superior to the tax liens of the United States and are entitled to satisfaction from the proceeds of the judicial sale. The remaining proceeds shall be distributed amongst Ursula Steeley, Hubert Steeley, and the United States pursuant to a future Order of disbursement.

## IV. CONCLUSION

**IT IS ORDERED:**

1. Summary judgment is granted for Plaintiff on both the issue of Defendant Hubert Steeley's liability under § 6672 and foreclosure of the tax liens under § 7403.

2. The exact amount of the lien of the United States remains to be determined at the bench trial.

3. A judicial sale of the properties will occur upon further Order.

**ORDERED** on May 13, 2010.

                                            **/s/ Richard Smoak**
                                            **RICHARD SMOAK**
                                            **UNITED STATES DISTRICT JUDGE**